# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| ALEKSANDR NIKOLAEVICH KASHIN, | CASE NO. 02CV2495-LAB (WMC) |
|---|---|
| Plaintiff, | **ORDER DENYING DEFENDANT'S MOTION FOR ATTORNEYS' FEES** |
| vs. | |
| DOUGLAS BARRY KENT, | |
| Defendant. | |

This action in tort arose from an automobile accident in Russia in which Defendant Kent, who was then Consul General, is alleged to have seriously injured Plaintiff Kashin, paralyzing him from the neck down. The accident allegedly occurred when Defendant was driving home from a gym after work. On October 10, 2006, the U.S. Court of Appeals for the Ninth Circuit ruled in favor of Defendant Kent. The Ninth Circuit held that Kent was acting within the scope of his employment and therefore was entitled to immunity.

**II.  Procedural Background**

On December 5, 2006, Defendant attempted to move for an award of attorneys' fees and costs under the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412. Defendant filed a motion without obtaining a hearing date as required by Civil Local Rule 7.1(b) and (e)(1) and the Court's standing order, merely listing the date he filed his motion as the hearing date. On December 14, 2006, the Court rejected the motion for filing, noting both the Civil Local Rules Violation and the motion's apparent

/ / /

lateness under 28 U.S.C. § 2412(d)(1)(B). Defendant was directed, if he wished to refile his motion, to address these two identified deficiencies.

Defendant filed a second motion for attorneys' fees and expenses on December 21, 2006 (the "Motion"). It is this Motion the Court is ruling on. Defendant pointed out that, in light of Ninth Circuit precedent, its motion was brought three days before the deadline of December 8, 2006, which was 30 days after a petition for a writ of certiorari would have been untimely. (Motion at 3:5–24.) Although Defendant filed this motion with the notation "Nunc Pro Tunc to December 5, 2006" in the caption, the Motion itself explains that it is merely requesting the Court to accept the Motion Nunc Pro Tunc. (*Id.* at 3:23–25.) Defendant did obtain a hearing date for this Motion.

## II. Discussion

### A. Failure to Obtain Hearing Date

Civil Local Rules 7.1(b) and (e)(1) require parties bringing a noticed motion to first obtain a hearing date from the clerk of the judge to whom the case is assigned. In this case, Defendant concededly did not do so. The requirement that a party obtain a hearing date from the judge's clerk is no empty formality; it is a rule of substantial importance. Under Civil Local Rule 7.1(e)(1)–(3), the hearing date sets in motion a calendar for the filing of opposition and reply briefs; opposition is due 14 calendar days before the hearing date, and replies are due 5 court days before the hearing date. If, as was the case with the motion filed on December 5, the hearing date is the same as the filing date, in effect no hearing is scheduled, and no time is permitted for the filing of oppositions or replies. By selecting the filing date as the hearing date and so noting in the caption, Defendant effectively prevented Plaintiff from timely opposing the motion and ensured that no hearing was actually scheduled at which Plaintiff could appear and present his opposition.

Furthermore, permitting parties to impose hearing dates on the Court impairs the Court's ability to manage its own calendar and to monitor the timeliness of motions. Had Defendant requested a hearing date from the clerk for his first motion, the timeliness of the initial motion might have been promptly addressed. As it was, the Court had no opportunity to request clarification from the parties.

Contrary to Defendant's assertions, (Mot. at 2:21–3:1), this is not a new rule associated with the newly-adopted electronic filing procedures. Defendant asserts that "Petitioner's local counsel then

contacted the Court as soon as it became aware of its oversight and requested a hearing date . . . ." (*Id.* at 3:2–3.) In fact, however, Defendant waited five days after being electronically notified of the error. An attorney's claimed unfamiliarity with the rules does not excuse the failure.

Civil Local Rule 83.1(a) provides that failure of counsel to comply with the Civil Local Rules "may be ground for imposition by the court of any and all sanctions authorized by statute or rule or within the inherent power of the court . . . ." Failure to obey the requirements of Civil Local rule 7.1(b) and (e)(1) regarding hearing dates was therefore a sufficient basis on which to reject the first attempted filing.

### B. Plaintiff's Delay

As Plaintiff points out, even after being notified his first attempted filing was deficient, Defendant then waited another seven days before filing. Even assuming the attempted filing tolled the 120-day filing period, the subsequent delay in filing would have put the Motion's filing date past the deadline.

In addition, the Court notes Defendant waited until day 117 of the 120-day filing period before making his first attempt to file. Bearing in mind the last-minute timing, Defendant ran the risk that his initial motion might have been rejected and his motion untimely, which is in fact what happened. *See Stillman v. LaMarque*, 319 F.3d 1199, 1203 (9th Cir. 2003) ("By waiting to the eleventh hour, [petitioner's] lawyer took a risk that something might go awry.") *Accord McIsaac v. Ford*, 193 F. Supp.2d 382, 384 (D.Mass. 2002) ("The risk of a dismissal with prejudice is one that [plaintiff] assumed by waiting until two days before the expiration of the statute of limitations to file his Complaint and then doing nothing until the last minute to have it served."); *Steele v. United States*, 390 F. Supp. 1109, 1112 (C.D.Cal. 1975) ("[T]he risk of dismissal is one which such a plaintiff assumes when a decision is made to wait until the last minute.") Especially where, as here, the party's own error causes a filing to be untimely, federal courts are under no obligation to come to the rescue of last-minute filers. *See, e.g., DeBruyne v. Equitable Life Assur. Soc. of U.S.*, 920 F.2d 457, 471 (7th Cir. 1990); *Oquendo-Ayala v. United States*, 30 F. Supp.2d 193, 195–96 (D.P.R. 1998) (finding no compelling reason to construe a claim as timely filed when claimant waited until eight days before a two-year limitations period had expired and failed to follow filing instructions).

Defendant's request that its application filed December 21 be filed *nunc pro tunc* to December 5, 2006 is therefore denied.

Although the thirty-day time period is not jurisdictional, *Scarborough v. Principi*, 541 U.S. 401, 413–14 (2004), untimeliness alone requires denial of the application. *Arulampalam v. Gonzales*, 399 F.3d 1087, 1090 (9th Cir. 2005) (while noting that fee application deadlines were not jurisdictional, denying application). Because the EAJA waived sovereign immunity, the time limits for submitting EAJA fee applications are strictly construed. *Id.* (quoting *Auke Bay Concerned Citizen's Advisory Council v. Marsh*, 779 F.2d 1391, 1392–93 (9th Cir. 1986). *See also Zheng v. Ashcroft*, 383 F.3d 919, 922 (9th Cir. 2004) (after noting petitioner's motion to extend time *nunc pro tunc* had been denied, denying fee application as untimely).

### C.  Futility

Even if Defendant's Motion were timely, it would be denied for other reasons.

#### 1. Tort Exception

In contrast to § 2412(a)(1) and (b), the EAJA provides for a mandatory award attorneys' fees "to a prevailing party other than the United States fees and other expenses . . . incurred by that party in any civil action (<u>other than cases sounding in tort</u>) . . . ." 28 U.S.C. § 2412(d)(1)(A) (emphasis added). Because the claims in this case arise from injuries sustained in an automobile accident allegedly caused by Defendant's negligence, this action is expressly excluded.

Defendant contends this is not a case sounding in tort, but rather a petition for certification based on the terms of Defendant's employment. Defendant is unable, however, to cite any authority for the proposition that an action does not sound in tort if some defense — such as immunity — prevents the Court from reaching the merits of the tort claims. *See In re Turner*, 14 F.3d 637, 640 (D.C.Cir. 1994) ("The statute itself . . . does not parse 'case' into tort and non-tort issues but instead provides a blanket exception for *cases* that sound in tort.")

Defendant contends the EAJA's tort exception does not apply to federal employees implementing the certification statute. (Reply at 4.) Once again, however, Defendant is unable to cite any authority for this proposition. Rather, he simply argues the authority Plaintiff cites is unpersuasive. (*See id.* at 5:1–9:13.) Defendant devotes his efforts to arguing on the basis of

Congressional intent and policy reasons that § 2412(d)(1)(A) should not bar recovery of attorneys' fees by a defendant who is a federal employee and who sought certification.

In interpreting a statute, the Court's starting point is the statute's plain language. *Consejo de Desarrollo Economico de Mexicali, A.C. v. United States*, ___ F.3d ___, 2007 WL 1054271 at *7 (9th Cir. 2007) (citing *Children's Hosp. & Health Ctr. v. Belshe*, 188 F.3d 1090, 1096 (9th Cir. 1999). If the plain meaning of the statute is unambiguous, that meaning is controlling and the Court need not examine legislative history as an aid to interpretation unless the legislative history clearly indicates that Congress meant something other than what it said. *Consejo de Desaroolllo Economico*, 2007 WL 1054271 at *7 (quoting *Carson Harbor Village, Ltd. v. Unocal Corp.*, 270 F.3d 863, 877 (9th Cir. 2001) (en banc).

The "plain language" principle applies here. Although Defendant cites portions of the legislative history for the proposition that Congress did not mean the language to apply as written, (Reply at 5:11-17 (citing H.R. Conf. Rep. No. 1434, 96th Cong., 2d Sess. 25 (1980) *reprinted in* 1980 U.S.C.C.A.N. 5003, 5014; S. Rep. No. 253, 96th Cong., 1st Sess. 20 (1979))), the Court need not — and does not — reach his arguments.[1] The statutory language is plain, and the cited legislative history does not clearly show Congress meant something other than what it said.

---

[1] As an aside, the Court notes Defendant's reading of the legislative history imports reasoning not mentioned by either house of Congress, and draws a distinction where Congress drew none. In order for the Court to accept Defendant's argument, the Court would have to assume Congress, in accepting existing remedies for cases sounding in tort as "adequate and equitable," did not realize defendants would not be able to make contingency fee arrangements with their counsel. However, Congress is presumed to know general principles of tort law, including payment arrangements available to plaintiffs and defendants. *United States v. Alvarez-Hernandez*, 478 F.3d 1060, 1065 (9th Cir. 2007) (citing precedent for the proposition that Congress is presumed to act with awareness of existing law pertinent to the legislation it enacts) (citations omitted).
Furthermore, "the EAJA amounts to a partial waiver of sovereign immunity. Any such waiver must be strictly construed in favor of the United States." *Sorenson v. Mink*, 239 F.3d 1140, 1148 (9th Cir. 2001) (quoting *Ardestani v. INS*, 502 U.S. 129, 137, 112 S.Ct. 515, 116 L.Ed.2d 496 (1991)) (internal quotation marks omitted). Even if the Court were convinced Congress intended to waive immunity in situations such as Defendant's, the fact remains that Congress did not do so. It is therefore not appropriate for the Court to infer a waiver in Defendant's situation. Waivers of sovereign immunity may not be enlarged beyond what the statutory language requires. *Scarborough v. Principi*, 541 U.S. 401, 426, 124 S.Ct. 1856, 1872 (2004) (quoting *United States v. Nordic Village, Inc.*, 503 U.S. 30, 34, 112 S.Ct. 1011, 117 L.Ed.2d 181 (1992)). "[L]imitations and conditions upon which the Government consents to be sued must be strictly observed and exceptions thereto are not to be implied." *Scarborough*, 541 U.S. at 426 (quoting *Lehman v. Nakshian*, 453 U.S. 156, 161, 101 S.Ct. 2698, 69 L.Ed.2d 548 (1981)).

1  Under § 2412(a)(1) and (b), the Court may award costs and attorneys' fees to a prevailing party.
2  Following Ninth Circuit precedent, however, the tort exception means sovereign immunity is not
3  waived for cases sounding in tort and the Court may not award fees or costs under any of these
4  provisions. *Campbell v. United States*, 835 F.2d 193, 196 (9th Cir. 1987) (holding that fees were not
5  recoverable under the EAJA because the case sounded in tort). *Cf. Lucarelli v. United States*, 943 F.
6  Supp. 157, 158 (D.P.R. 1996) (citing *Campbell* as tacitly denying attorneys' fees under any of the
7  EAJA's provisions).

### 2.    Substantial Justification

9  As a second and independent reason supporting the denial of Defendant's attorney fee
10 application, the Court finds the Government's position in the underlying litigation was substantially
11 justified. Under the EAJA, "a court shall award to a prevailing party other than the United States fees
12 and other expenses . . .unless the court finds that the position of the United States was substantially
13 justified or that special circumstances make an award unjust."  28 U.S.C. § 2412(d)(1)(A).
14 "Substantial justification" is not the same as prevailing on the merits. *Pierce v. Underwood*, 487 U.S.
15 552, 569 (1988) (noting that the Government "could take a position that is substantially justified, yet
16 lose"). Substantially justified does not mean "justified to a high degree," but rather "justified to a
17 degree that could satisfy a reasonable person." *Gonzales v. Free Speech Coalition*, 408 F.3d 613, 618
18 (9th Cir. 2005) (citing *Pierce*, 487 U.S. at 565). A parallel formulation of the test is whether there is
19 a dispute over which "reasonable minds could differ." 408 F.3d at 618.

20 Choice of law was a central issue in this case. As the Court noted previously, neither party was
21 able to cite binding authority to determine which law to apply in order to determine whether Defendant
22 was acting in the scope of his employment when the accident occurred. (Order of August 26, 2004,
23 at 5:10–11.) This Court had held that general principles of U.S. law should be applied, as set forth in
24 the Restatement (Second) of Agency. (*Id.* at 6:1–4.) On appeal, the Ninth Circuit rejected Defendant's
25 contention that California law applied, as well as the Government's contention the Restatement
26 (Second) of Agency provided the proper authority. *Kashin v. Kent*, 457 F.3d 1033, 1037 (9th Cir.
27 2006). Instead, the Court of Appeals relied on the location of Defendant's employer, and a process
28 of elimination to determine that the law of the District of Columbia should apply.

As is clear in the Ninth Circuit's opinion, this was a question of first impression. *Id.* at 1036 ("[T]he Federal Tort Claims Act (FTCA) is silent on what law to apply when the tort occurs in a foreign country, and no federal court in the United States has addressed that issue . . . .") While "there is no per se rule that EAJA fees cannot be awarded where the government's litigation position contains an issue of first impression," the Government's decision to pursue a reasonable interpretation not previously clarified by the courts can be expected to be substantially justified. *Gutierrez v. Barnhart*, 274 F.3d 1255, 1261 (9th Cir. 2001). Ordinarily, decisions to litigate issues of first impression are considered "substantially justified." *TKB Int'l, Inc. v. United States*, 995 F.2d 1460, 1468 (9th Cir. 1993) (holding that, because issue was one of first impression, the Government's appeal was substantially justified); *Stebco v. United States*, 939 F.2d 686, 688 (9th Cir. 1990) (same).

Because it applied District of Columbia law, the Court of Appeals reached a different conclusion than did this Court. The Court of Appeals analyzed the facts of Defendant's employment under that law to determine that, even though he was driving home from a gym when the accident occurred, he was acting within the scope of his employment. The Court of Appeals reasoned that Defendant was considered to be on duty at all times. *Kashin*, 457 F.3d at 1043. In so concluding, the Court of Appeals distinguished several precedents relied on by the United States and by this Court in its underlying opinion, including *Clamor v. United States*, 240 F.3d 1215 (9th Cir. 2001); *Smith v. Grimes*, 798 F. Supp. 798 (D.D.C. 1992); and *District of Columbia v. Coron*, 515 A.2d 435 (D.C. 1986).

Defendant contends the Government's decision to litigate was not substantially justified because no evidence of the Government's reasons for doing so was provided. (Reply at 9:22–10:7.) As the Court of Appeals held, however, the Government's motive was irrelevant and no need existed for an evidentiary hearing to explore the Government's motivation underlying its decision to litigate. *Kashin*, 457 F.3d at 1043.

Applying the standard set forth above, the Court finds a reasonable person could believe that some other law besides the law of the District of Columbia — such as general principles of U.S. law — could apply, and therefore could be satisfied with the Government's position. The Court therefore finds the Government's position was substantially justified.

### III. Conclusion and Order

For these reasons, Defendant Kent's request that his Motion for costs and attorneys' fees be filed *nunc pro tunc* to December 5, 2006 is **DENIED**. The Motion is hereby **DENIED**.

**IT IS SO ORDERED**.

DATED: April 26, 2007

*[signature]*

**HONORABLE LARRY ALAN BURNS**
United States District Judge